UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHARLES ALEXANDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:24-cv-00581-JPH-MG ) |
| SAMUEL BYRD Dr., Site Med. Dir., *et al.*, | ) ) |
| Defendants. | ) ) |

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Charles Alexander alleges that medical officials at Wabash Valley Correctional Facility were deliberately indifferent to a knee injury he suffered while incarcerated. Mr. Alexander seeks a preliminary injunction requiring the defendants to provide an MRI of his injured knee. Dkt. 4. For the reasons below, those motions are **GRANTED**. Dkt. [4]; dkt. [39].

### I. Motion to Substitute Party

On July 25, 2025, the Court issued an order recognizing that it appeared from Defendants' filings that Dr. Manju Thothala was a "proper defendant in this case" because Dr. Thothala was the Centurion administrator who denied Mr. Alexander's MRI request. Dkt. 32 at 3. The Court gave Defendants through August 8, 2025 to object to adding Dr. Thothala as a defendant. *Id.*

Defendants have filed a motion to substitute Dr. Thothala as a defendant in place of "Centurion Regional Medical Director," who Defendants had previously identified as Dr. Stephanie Riley. Dkt. [35]. Mr. Alexander has not opposed that motion. For the reasons in the motion, that motion is **GRANTED**.

1

*Id.* The **Clerk is therefore directed** to remove "Centurion Regional Medical Director" as a defendant and to add Manju Thothala, MD, as a defendant. *Id.* Appearance of counsel for Dr. Riley is effective for Dr. Thothala. *Id.*

## II. Facts

Mr. Alexander injured his knee playing soccer at Wabash Valley Correctional Facility in June 2024. Dkt. 24-1 at 3. He heard a "pop" and fell to the ground. *Id.* He reported severe pain and an inability to bear any weight on that leg. *Id.* at 4. A nurse provided Mr. Alexander with crutches, an elastic bandage, and acetaminophen. *Id.* The same day, Dr. Samuel Byrd ordered x-rays of Mr. Alexander's knee, which were taken in early July and did not reveal any injury. *Id.* at 5–6, 8.

On July 10, Nurse Practitioner Casey Jacobs-Campbell examined Mr. Alexander. *Id.* at 11–13. She requested an ultrasound after Mr. Alexander told her that the only improvement was decreased swelling. *Id.* at 11–16. The ultrasound showed thickened knee ligaments, "suggest[ing] sprain without full-thickness tear." *Id.* at 18. Notes from the ultrasound examination state that an "MRI examination could better demonstrate this anatomy." *Id.*

NP Jacobs-Campbell reviewed the ultrasound results with Mr. Alexander on August 19, 2024. *Id.* at 22–24. She requested authorization for an MRI on September 6. *Id.* at 27–28. On October 4, Dr. Manju Thothala denied that request and approved an alternative treatment plan "to continue current management, along with [p]hysical therapy." Dkt. 24-3.

Mr. Alexander completed eight sessions of physical therapy between November 4, 2024, and February 24, 2025. Dkt. 24-1 at 39–46. The physical therapist then observed that Mr. Alexander had not improved and recommended that he discontinue physical therapy for at least two months. *Id.* at 46. During that time, he recommended that Mr. Alexander receive a steroid injection into the knee. *Id.* at 46, 50.

Mr. Alexander received the injection on April 18, 2025. Dkt. 38-1 at 6. At that appointment, he reported pain when walking and using a cane 5 to 6 times a week. *Id.* at 3. In mid-July 2025, he submitted a Request for Health Care saying that his knee was still "messed up" and he needed his lay-in extended. Dkt. 41-1 at 56. On August 13, 2025, his request for "meals in house" was approved because Mr. Alexander was "on crutches." *Id.* at 57.

Mr. Alexander seeks a preliminary injunction requiring Defendants to provide an MRI of his knee. Dkt. 4; dkt. 39.

### III. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the

3

harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

### IV. Analysis

**A. Likelihood of Success**

The Eighth Amendment requires states "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021).

For the first element, a "medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021). Here, Defendants do not contest that Mr. Alexander's knee injury is a serious medical condition. *See* dkt. 24; dkt. 36.

For the second element, defendants must have "actually [known] of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The Seventh Circuit has held that this element can be satisfied when a prison official "persists in a course of treatment known to be ineffective," "chooses an easier and less efficacious treatment without exercising professional

4

judgment," or allows "an inexplicable delay in treatment which serves no penological interest." *Id.* at 730.

Here, by mid-July 2025, thirteen months had passed since Mr. Alexander's knee injury. In that time, Mr. Alexander received an x-ray, an ultrasound, physical therapy, and a knee injection. The undisputed medical evidence available at this stage, however, shows that none of those treatments were effective. The x-ray provided no helpful diagnosis, so an ultrasound was required. Dkt. 24-1 at 11–16, 18. The ultrasound was admittedly less helpful than an MRI, but suggested a sprain or partial tear. *Id.* at 18. So Mr. Alexander was provided physical therapy, which undisputedly did not help. *Id.* at 46, 50 (physical therapist logging "no progress made" and that "PT is not helping"). Finally, Mr. Alexander received a knee injection on April 18, 2025. Dkt. 38-1 at 6.

Then, in mid-July 2025, Mr. Alexander reported that his knee was still "messed up" so he needed meals delivered, and the prison response approving that request indicated that Mr. Alexander was "on crutches." Dkt. 41-1 at 56–57. Yet Defendants have provided no designated evidence of additional efforts to resolve Mr. Alexander's serious medical concerns about his knee since then. Dkt. 36 at 4–5 (Defendants' response addressing Mr. Alexander's "medical treatment since February 2025").

Two months of inaction after thirteen months of unsuccessful treatment is enough to show a strong likelihood of success on a deliberate indifference claim. *Petties*, 836 F.3d at 730 (persisting in ineffective treatment and

inexplicable delays that serve no penological interest can support deliberate indifference). In fact, after Mr. Alexander submitted his Request for Health Care on July 12, 2021 saying that his knee was still "messed up" and that he had not seen a medical provider, he received no response for a month. Dkt. 41-1 at 56. And he still did not receive a healthcare appointment, even though the approval of his request for "meals in house" noted that he was "on crutches." *Id.* at 57.

Defendants nevertheless argue that Mr. Alexander has not shown a likelihood of success because the decision to deny NP Jacobs-Campbell's request for an MRI was based on medical judgment. Dkt. 36 at 3. They rely on Dr. Thothala's affidavit explaining that an MRI was not necessary under the medical records available at the time and that "[p]hysical therapy is the initial intervention typically recommended." Dkt. 36-1 at 2. But, even accepting that as true at the time of the initial denial, Defendants have not designated evidence that it remained true after mid-July 2025. By that time, Mr. Alexander's physical therapist had concluded that physical therapy was unsuccessful and should be discontinued. Dkt. 24-1 at 39–46. And Dr. Thothala's affidavit admits that "[s]hould symptoms persist, worsen, or demonstrate instability, imaging may be reconsidered based on updated clinical findings." Dkt. 36-1 at 2.

Finally, Defendants argue that, after the April 2025 injection, Mr. Alexander "did not submit any further healthcare request forms for complaints about his knee" and "did not reach out to the medical department for a follow-up appointment after his injection. Dkt. 36 at 5. But Mr. Alexander *did* file a Request for Health Care in mid-July 2025, which received no response for a

6

month and did not result in a follow-up appointment. Dkt. 41-1 at 56–57. Moreover, the burden to pursue follow-up care is not solely on Mr. Alexander—Defendants' designated evidence indicates that "onsite staff is expected to continue to follow up" with Mr. Alexander and "reassess [his] response" to treatment. Dkt. 36-1 at 2 (Thothala affidavit).

The medical evidence designated at this stage of the case therefore shows the "strong" likelihood of success on the merits required for a preliminary injunction. *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020).[1]

### B. Irreparable Harm and Traditional Legal Remedies

The Seventh Circuit has held that "severe ongoing pain from a medical condition" can support irreparable harm for a preliminary injunction. *Wheeler v. Wexford Health Servs.*, 689 F.3d 680, 682 (7th Cir. 2012); *accord Int'l Ass'n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 452 (7th Cir. 2022).

Defendants do not dispute that Mr. Alexander remains in pain from his knee injury or that the injury continues to require medical care. *See* dkt. 24; dkt. 36. And the designated medical evidence indicates that in April 2025 Mr. Alexander remained in pain and used a cane 5–6 times a week, and that in August 2025 he was on crutches. Dkt. 38-1 at 3–5; dkt. 41-1 at 57. That is enough to meet the threshold showing of irreparable harm that cannot be addressed with traditional legal remedies. *See Wheeler*, 689 F.3d at 682 ("Just as prison administrators must deal promptly with their charges' serious medical

---

[1] Because the lack of treatment since mid-July 2025 allows the Court to resolve Mr. Alexander's motion for injunctive relief, the Court need not address whether the evidence from before that time may support a deliberate indifference claim.

7

problems, so federal judges must not leave litigants to bear pain indefinitely."); *Bentz v. Ghosh*, 718 F. App'x 413, 420 (7th Cir. 2017).

### C. Public Interest and Balancing Harms

Defendants argue that a preliminary injunction would be against the public interest because an injunction "would force defendants to pay for a medical test" and because "[a]ny additional action ordered by the Court will take medical resources away from other inmates." Dkt. 24 at 18. Those arguments cannot succeed because Defendants are required to provide constitutionally sufficient care to all inmates, even if some of that care is expensive. *See Boyce*, 314 F.3d at 889. An MRI is also likely to result in more efficient and successful medical care than Mr. Alexander has received so far, since the medical evidence indicates that it provides more helpful imaging than the prior x-ray and ultrasound. Dkt. 24-1 at 18.

Since the relief here is limited to providing an MRI, it will not cause "excessive judicial involvement in day-to-day prison management," which is disfavored. *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). And Mr. Alexander has shown a strong likelihood of success on his constitutional claim, so a preliminary injunction is in the public interest. *See United States v. Raines*, 362 U.S. 17, 27 (1960) ("[T]here is the highest public interest in the due observance of all the constitutional guarantees, including those that bear the most directly on private rights."); *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wisc. 2009).

### D. Scope of Relief

Based on the undisputed designated evidence before the Court, all applicable factors weigh in favor of preliminary injunctive relief.

The preliminary injunction will run against Dr. Thothala, who denied Mr. Alexander's request for an MRI when NP Jacobs-Campbell requested it. Dkt. 24-3. It will require Dr. Thothala to approve and facilitate an MRI of Mr. Alexander's injured knee. The preliminary injunction will automatically expire 90 days after its issuance. 18 U.S.C. § 3626(a)(2). Mr. Alexander may request that it be renewed if the MRI has not been completed by that time.

## V. Conclusion

Defendants' unopposed motion to substitute is **GRANTED**. Dkt. [35]. The **Clerk is directed** to add Manju Thothala, MD as a defendant and to remove "Centurion Regional Medical Director" as a defendant.

Mr. Alexander's motions for injunctive relief for an MRI of his knee are **GRANTED**. Dkt. [4]; dkt. [39]. The preliminary injunction will issue by separate entry.

Dr. Thothala **shall file** a status update regarding her compliance with the preliminary injunction **within 14 days** after service of this order. Magistrate Judge Garcia is asked to hold a status conference to address compliance with the preliminary injunction, case status, and potential settlement of this matter.

**SO ORDERED.**

Date: 9/30/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

CHARLES ALEXANDER
290923
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only